STATE of Wisconsin EX REL. Albert S. BIESER, Petitioner-Appellant,

v.

Donald PERCY, Secretary, Department of Health & Social Services, State of Wisconsin, Respondent.†

Court of Appeals

No. 79-804. Argued October 25, 1979.—
Decided May 23, 1980.
(Also reported in 295 N.W.2d 179.)

† Petition to review denied. ABRAHAMSON, J., took no part.

For the petitioner-appellant there were briefs by *Ben Kempinen* and *Legal Assistance to Inmates Project* of Madison, and oral argument by *Ben Kempinen.*

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, and *Chris Heikenen,* assistant attorney general, and oral argument by *Chris Heikenen,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J.   Albert J. Bieser has appealed from the judgment of the circuit court which dismissed his petition for a writ of habeas corpus. We affirm that judgment.

The issues are:

1.  Does forfeiture of good time earned on mandatory parole because of a parole violation subject the parolee to double jeopardy and to denial of due process, contrary to the fifth and fourteenth amendments to the United States Constitution?

2.  Does an order by the Department of Health and Social Services that a parolee forfeit good time violate

art. VII, sec. 2 of the Wisconsin Constitution, which vests the judicial power of this state in the courts?

Appellant was convicted of one count of second-degree murder and one count of theft, contrary to secs. 940.02 and 943.20(1)(a), Stats. On October 4, 1971 he was sentenced to concurrent terms of five to seven, and two years.[1] His maximum discharge date was calculated to be October 6, 1978.[2]

Appellant was paroled at his mandatory release date, October 28, 1975. That date was computed by subtracting the good time he had earned pursuant to secs. 53.11 and 53.12, Stats., from the maximum term of seven years.

September 27, 1977 appellant was convicted of one count of reckless use of a weapon September 18, 1977, contrary to sec. 941.20(1)(a), Stats. Appellant was sentenced to a term of six months for this conviction, with the first thirty days to be served in the House of Correction in Milwaukee County, the remainder of the term being stayed.

Appellant's parole was revoked by the department and he was received at the Wisconsin State Prison February 7, 1978. His sentence for the conviction of reckless use of a weapon was modified by the court March 31, 1978 which ordered that the remaining five months run concurrently with the prior sentences.

The department ordered that appellant forfeit all good time he had previously earned, including his "street time." The effect of that forfeiture is to change his

---

[1] The record of conviction is not before us. The petition alleges that the appellant was sentenced "to a term of five to seven years for the murder . . . ." At the time the appellant was convicted and sentenced, sec. 940.02, Stats., provided a sentence of not less than five nor more than twenty-five years.

[2] We make no determination as to the accuracy of that date because the issue is not before the court.

maximum discharge date from October 6, 1978 to December 12, 1980.

1. *Double Jeopardy Not Imposed And Due Process Not Denied*

The fifth amendment to the United States Constitution provides, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

Appellant contends that he has been subjected to double jeopardy because he underwent punishment during the time he was on parole and he must serve that time again in prison.

A mandatory release parolee is a prisoner released pursuant to sec. 53.11(7)(a), Stats., when he has served his sentence less credits for good time granted and not forfeited. He is referred to as a mandatory release parolee because the department has no discretion to deny his release unless the prisoner waives his good time. *State ex rel. Hauser v. Carballo*, 82 Wis.2d 51, 55, 78, 261 N.W.2d 133 (1978). The mandatory release parolee is distinguished from the discretionary parolee. The latter is released at the discretion of the department under sec. 57.06(1)(a), Stats., when he or she has served a minimum portion of the sentence.

Street time, the time spent on parole by a mandatory release parolee, "is time served out of prison as a matter of right (*i.e.*, good time, sec. 52.11(7)(a)), but subject to withdrawal on parole revocation under sec. 53.11(7)(b)." *Hauser*, 82 Wis.2d at 76, 261 N.W.2d at 145. That withdrawal is authorized by sec. 53.11(7)(b), Stats., which provides, "Any person on parole under this subsection may be returned to prison as provided in s. 57.06 (3) to serve the remainder of a sentence." Section 57.06 (3) provides that a parole violator may be returned to

prison and that his good time may be ordered forfeited as provided in sec. 53.11(2a), Stats.

The department therefore has the power to deny the mandatory release parolee credit against his sentence for his successfully served parole time, his street time. *Hauser*, 82 Wis.2d at 76. The result may be, as here, that the mandatory release parole violator will be "required to serve beyond the final discharge date originally pronounced by the court." *Hauser*, 82 Wis.2d at 59, 261 N.W.2d at 137; *Putnam v. McCauley*, 70 Wis.2d 256, 260, 234 N.W.2d 75 (1975).

The guarantee against double jeopardy provides protection against criminal prosecutions after conviction or acquittal and protection against multiple punishments. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). We conclude that service in prison of time successfully served on parole and forfeited through revocation does not constitute punishment within the meaning of the double jeopardy clause.

*Bell v. Wolfish*, 441 U.S. 520 (1979), dealt with the question whether restrictions and conditions which accompany pretrial confinement of persons charged with a crime amount to punishment under the due process clause of the fifth amendment. The Court said that in making this determination, "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." 441 U.S. at 538. *Bell* held that restrictions and practices are not punishment if not employed "with an intent to punish." 441 U.S. at 561.

*State ex rel. Flowers v. H&SS Department*, 81 Wis.2d 376, 385, 260 N.W.2d 727 (1978), held that the conduct of a parolee in an incident for which he was criminally

charged and acquitted may constitute a ground for parole revocation. The parolee argued that revocation on that ground violated the constitutional protection against a subsequent criminal prosecution after an acquittal. The court concluded that whether a revocation proceeding was a criminal proceeding turned on whether revocation results in punishment and held, "A proceeding is criminal, for double jeopardy purposes, if it imposes a sanction *intended* as punishment." 81 Wis.2d at 383, 260 N.W.2d at 732 (emphasis added).

Parole revocation proceedings are not intended as punishment. "Revocation hearings are not concerned with retribution. Parole and probation are intended to foster the reintegration of the individual into society at the earliest opportunity. The ultimate question in revocation proceedings is whether the parolee remains a 'good risk'; whether his rehabilitation can be successfully achieved outside prison walls or will be furthered by returning him to a closed society." *Flowers*, 81 Wis.2d at 385, 260 N.W.2d at 732 (citations omitted). "The ends of parole revocation are . . . distinct from the punitive functions of the criminal law." 81 Wis.2d at 385, 260 N.W.2d at 733. If the result of parole revocation hearings does not constitute punishment, then having to serve the same time in prison which was successfully spent on parole is therefore not double punishment.

■

There is no doubt but that a parolee looks upon revocation and the resulting extension of his mandatory discharge date as punishment. A parolee enjoys a "limited freedom," *Tyler v. State Department of Public Welfare,* 19 Wis.2d 166, 172, 119 N.W.2d 460, 464 (1963), a "conditional" freedom or liberty. *State ex rel. Johnson v. Cady,* 50 Wis.2d 540, 548, 185 N.W.2d 306, 310 (1971). *Flowers* recognized that the parolee suffers "a grievous loss" when his conditional liberty is withdrawn. 81

Wis.2d at 385, 260 N.W.2d at 733. *Flowers* nevertheless held that parole revocation is not a punishment, for purposes of double jeopardy, because revocation is not intended as punishment.

*Flowers* concedes that an "element of punishment" exists in parole revocation, but states that the element "is attributable to the crime for which the parolee was originally convicted and sentenced. 81 Wis.2d at 386, 260 N.W.2d at 733. *Flowers* describes revocation as "a continuing consequence of the original conviction from which parole was granted" and concludes that parole revocation after an acquittal of another charge therefore does not result in double jeopardy. 81 Wis.2d at 386–87, 260 N.W.2d at 733.

*Flowers* means that the sentence imposed upon the defendant is subject to the statutory good time provisions, including the provisions for forfeiture. The possibility that the maximum discharge date will be extended is part of the parole, good time credit and forfeiture system to which a prisoner's sentence is subject. That possibility does not arise out of a new sentence. It is part of the conditions which attached to the original sentence, should the prisoner decide to accept that possibility through acceptance of parole.[3]

We agree, in view of *Flowers*, with the holding of *United States ex rel. McGill v. Schubin*, 475 F.2d 1257, 1259 (2d Cir. 1973), that "the denial of credit for time served on parole when a parole violator is returned to prison does not amount to an extension of the parolee's

---

[3] An inmate may waive his good time under sec. 53.11(4), Stats. The prisoner has his choice. "If a prisoner does not want to risk parole revocation and the potential postponement of his final discharge date, the legislature allows him to waive good time and spend his full sentence in prison." *Hauser*, 82 Wis.2d at 78, 261 N.W.2d at 146.

sentence, but rather is 'potentially a part of the original sentence, [and] hence not invalid for violation of the double jeopardy inhibition,' " quoting from *Dolan v. Swope*, 138 F.2d 301, 304 (7th Cir. 1943).

Appellant points out that a discretionary parolee is treated differently than a mandatory release parolee in that the former does not face a changed maximum discharge date as the result of a parole violation.[4] *State ex rel. Hauser v. Carballo*, 82 Wis.2d 51, 76–79, 261 N.W.2d 133, held that a mandatory release parole violator who loses sentence credit for successfully served parole time is not denied equal protection of the laws because the discretionary parole violator receives sentence credit for successfully served parole time. The equal protection question arising out of the difference in treatment between mandatory release and discretionary parolees, raised in passing by appellant, is irrelevant to the issue of double jeopardy.

We conclude that appellant has not been subjected to double jeopardy.

Appellant contends that forfeiture of his good time violates his due process rights under the fourteenth amendment as interpreted by *State ex rel. Solie v. Schmidt*, 73 Wis.2d 76, 82, 242 N.W.2d 244 (1976). *Solie* held that where a probationer is held in jail for an unreasonable period awaiting a revocation hearing, failure to deduct that time from the maximum sentence violates due process. Credit for appellant's jail time, if any, between the date of his last crime and the date of his

---

[4] The observation is partially true. If a discretionary parolee violates his parole before he reaches his mandatory release date, his maximum discharge date is not extended. Once he reaches his mandatory release date, even if he is already on discretionary parole any time he spends on parole after that date is added to the maximum of his original sentence if he suffers revocation. *Putnam v. McCauley*, 70 Wis.2d at 260.

conviction or his parole revocation is not an issue on this appeal. *Solie* is inapplicable.

### 2. *Forfeiture Of Good Time Does Not Interfere With Judicial Power*

Appellant argues that, as fixed by the court, his maximum discharge date was October 6, 1978, at which time his sentence expired; that the department extended that date to December 12, 1980; and that extension by the department violates art. VII, sec. 2 of the Wisconsin Constitution which vests the judicial power of this state in the courts.

"It is the function of the legislature to prescribe the penalty and the manner of its enforcement; the function of the court to impose the penalty; while it is the function of the executive to grant paroles and pardons." *Drewniak v. State ex rel. Jacquest,* 239 Wis. 475, 488, 1 N.W.2d 899, 905 (1942).

[T]he judicial process [is] terminated when a man, once presumed to be innocent, has been accused of a crime, tried, defended, found guilty, sentenced and, if he wishes, gone through the process of appeal. The adversary system has terminated and the administrative process, vested in the executive branch of the government, directed to the correctional and rehabilitative processes of the parole and probation system has been substituted in its place. *State ex rel. Johnson v. Cady,* 50 Wis.2d at 546, 185 N.W.2d at 309.

The sentence imposed by the court is subject to the statutory parole and good time provisions which are administered by the executive. The department is an executive agency. Secs. 15.01(1) and 15.19, Stats. The department, in ordering revocation of appellant's parole and forfeiture of his street time in connection with that revocation, did no more than exercise its executive authority. No usurpation of judicial power has occurred.

*By the Court.*—The judgment of the circuit court which dismissed the petition for a writ of habeas corpus is affirmed.